UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

ERIE GROUP LLC, Individually and on behalf
of GUAYABA CAPITAL TOTAL RETURN
FUND L.P.,

                    **Plaintiffs,**

                    **-against-**

GUAYABA CAPITAL, LLC,
GUAYABA GP, LLC, KEITH ESPINOSA,
SS&C TECHNOLOGIES INC., and
GUS SACOULAS,

                    **Defendants.**

------------------------------------------------------------- X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: _10/8/15_

**OPINION AND ORDER**

**14-cv-5668 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       Erie Group LLC ("Erie"), an investor in the hedge fund Guayaba

Capital Total Return Fund L.P. (the "Fund"), asserts violations of section 10(b) of

the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5

promulgated thereunder against Guayaba Capital, LLC ("GCL"), the Fund's

investment manager, Guayaba GP, LLC ("GGL"), the Fund's general partner, and

Keith Espinosa, GCL's sole member.  Erie also asserts a violation of section 20(a)

of the Exchange Act against Espinosa, and common law claims for fraud, negligent

misrepresentation, breach of fiduciary duty, and aiding and abetting breach of

fiduciary duty against all defendants.[1]  Defendants now move to dismiss the

Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  For the following reasons, defendants' motion is GRANTED and

the Complaint is dismissed.

## I.    BACKGROUND[2]

### A.    General Background

Espinosa was the managing member of GCL and GGL.[3]  Prior to

2012, Espinosa met with non-party Eugene Belozersky to discuss Belozersky's

high-frequency trading algorithm ("Mouse Trap").[4]  Espinosa expressed interest in

---

[1]    The Verified Complaint ("Complaint") indicates that Erie brings this action individually and on behalf of the Fund.  For example, Erie asserts derivative claims on behalf of the Fund for fraud, negligent misrepresentation, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty against defendants SS&C Technologies, Inc. ("SS&C"), the Fund's outside administrator, and Gus Sacoulas, an employee of SS&C.  It appears, however, that the securities fraud claims are brought by Erie solely in its individual capacity, as the purchaser of a limited partnership in the now-dissolved Fund.  *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp."), at 22 ("The Complaint establishes that plaintiffs [*sic*] have standing to bring this suit as purchasers of a security interest within the Fund.  Plaintiff was a limited partner in the Fund.").  As this Opinion and Order primarily addresses the securities fraud claims, I will refer to Erie as the "plaintiff."

[2]    The facts below are taken from the Complaint.

[3]    *See* Compl. ¶ 22.

[4]    *See id.* ¶¶ 32, 35.

creating an investment vehicle to harness the trading potential of Mouse Trap, and formed GGL for that purpose.[5]  The first potential investor in Mouse Trap was the Lombardo Group ("Lombardo").  Lombardo negotiated an investment with defendants' counsel, but did not make an investment.[6]  GCL paid over $51,000 in legal fees in connection with the proposed Lombardo deal.[7]

In October 2012, Belozersky, in his capacity as a trader for GGL, approached Erie regarding a potential investment in the prospective Fund.[8]  "After a series of emails and meetings, Erie agreed to invest one million dollars in the Fund."[9]  Espinosa switched counsel and new counsel charged $32,000 to draft the deal documents associated with the formation of the Fund.[10]  Espinosa communicated regularly with the principals of Erie for the five months prior to the launch of the Fund.[11]

## B.    The Omissions and the Deal Documents

---

[5]     *See id.* ¶ 36-37.

[6]     *See id.* ¶¶ 43-46.

[7]     *See id.* ¶¶ 47-48.

[8]     *See id.* ¶ 49.

[9]     *Id.* ¶ 51.

[10]    *See id.* ¶ 55.

[11]    *See id.* ¶ 56.

Each misstatement identified in the Complaint is alleged as a failure to disclose.  The Complaint alleges that defendants did not disclose: (1) the failed Lombardo investment; (2) the material liability incurred as a result of negotiating with Lombardo; (3) the intent to pass that liability on to the Fund as a start-up expense; (4) the intent to hold the Fund liable for the costs of operating GCL and GGL, including the legal fees associated with negotiating and drafting the operating and employment agreements for Espinosa's LLCs; (5) the plan to shift all material liabilities of GCL and GGL to the Fund in the event the Fund was not successful; and (6) that Erie held 92.6 percent of the limited partnership interest in the Fund.[12]  On March 4, 2013, Erie reviewed a Private Offering Memorandum, and as a result of the omissions identified above, executed a Limited Partnership Agreement on March 25, 2013.[13]

### C.   The Fund and Its Failure

The Fund began trading with Mouse Trap in April 2013.[14]  However, Mouse Trap failed to perform according to the projections and the back-testing that

---

[12]   *See id.* ¶¶ 57-62.

[13]   *See id.* ¶¶ 17, 18, 67.

[14]   *See id.* ¶ 73.

had been advertised.[15]  Due to the Fund's poor performance — even after Espinosa changed the trading strategy — Erie sought to withdraw from the Fund in November 2013.[16]  Espinosa permitted Erie to withdraw from the Fund without invoking the lock-up penalty.  Because Espinosa represented that the Fund had lost 6.5 percent of its value through trading losses, Erie estimated its loss to be roughly $65,000, based on its initial one million dollar investment.[17]

Following Erie's withdrawal, Espinosa dissolved the Fund.[18]  The dissolution resulted in the Fund being charged an early termination fee of $12,000 by the administrator.[19]  In November 2013, Espinosa informed Erie that it would be charged the expenses associated with the dissolution and termination of the Fund.[20]  Espinosa presented a final accounting statement and caused Erie's capital account in the limited partnership to be reduced by over $108,676 as "fees and expenses" associated with Erie's investment.[21]  In May 2014, Espinosa provided Erie with a

---

[15]     *See id.* ¶ 74.

[16]     *See id.* ¶¶ 75-76, 78.

[17]     *See id.* ¶¶ 79-81.

[18]     *See id.* ¶ 82.

[19]     *See id.* ¶ 83.

[20]     *See id.* ¶ 84.

[21]     *See id.* ¶ 85.

"K-1" statement of partnership interest for calendar year 2013.  According to the

K-1, Erie's trading losses were only $38,597 or 3.8 percent, not 6.5 percent as had

been represented.  At the same time, the expenses charged to Erie increased to

$124,569.  Accordingly, Erie alleges a total loss of $163,066.[22]

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court

must "accept[] all factual allegations in the complaint as true and draw[] all

reasonable inferences in the plaintiff's favor."[23]  The court evaluates the

sufficiency of the complaint under the "two-pronged approach" set forth by the

Supreme Court in *Ashcroft v. Iqbal.*[24]  Under the first prong, a court may "begin by

identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth."[25]  For example, "[t]hreadbare recitals of the

---

[22]    *See id.* ¶¶ 90-92.  The Complaint also contains several allegations that only appear once and receive no further elaboration.  *See id.* ¶¶ 10 ("Defendants failed to disclose that the trading fees, short interest, and commissions would be a significant part of the trading losses."), 11 ("Defendants misrepresented the value of plaintiffs' interest in the fund when they provided the plaintiff with several monthly reports with inflated financial information.").

[23]    *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[24]    *See* 556 U.S. 662, 678-79 (2009).

[25]    *Id.* at 679.

elements of a cause of action, supported by mere conclusory statements, do not suffice."[26]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[27]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]  "The plausibility standard is not akin to a probability requirement" because it requires "more than a sheer possibility that a defendant has acted unlawfully."[29]

When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[30]  A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral'

---

[26]     *Id.* at 678.

[27]     *Id.* at 679.

[28]     *Id.* at 678.

[29]     *Id.* (quotation marks omitted).

[30]     *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

to the complaint."[31]

### B. Heightened Pleading Standard Under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA")

Private securities fraud claims are subject to a heightened pleading standard. *First*, Rule 9(b) requires plaintiffs to allege the circumstances constituting fraud with particularity. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[32]

*Second*, the PSLRA provides that, in actions alleging securities fraud, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[33]

### C. Leave to Amend

Whether to permit a plaintiff to amend its complaint is a matter committed to a court's "sound discretion."[34] Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so

---

[31] *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[32] Fed. R. Civ. P. 9(b).

[33] 15 U.S.C. § 74u-4(b)(2).

[34] *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007).

requires."[35]  "When a motion to dismiss is granted, the usual practice is to grant

leave to amend the complaint."[36]  In particular, it is the usual practice to grant at

least one chance to plead fraud with greater specificity when a complaint is

dismissed under Rule 9(b).[37]  Leave to amend should be denied, however, where

the proposed amendment would be futile.[38]

## III.   APPLICABLE LAW

### A.   Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act prohibits using or employing, "in

connection with the purchase or sale of any security . . . any manipulative or

deceptive device or contrivance. . . ."[39]  Rule 10b-5, promulgated thereunder, makes

it illegal to "make any untrue statement of a material fact or to omit to state a

material fact . . . in connection with the purchase or sale of any security."[40]  To

sustain a claim for securities fraud under section 10(b), "a plaintiff must prove (1) a

---

[35]     Fed. R. Civ. P. 15(a).

[36]     *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[37]     *See ATSI,* 493 F.3d at 108.

[38]     *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir. 2002).

[39]     15 U.S.C. § 78j(b).

[40]     17 C.F.R. § 240.10b-5.

material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[41]

### 1.    Material Misstatements or Omissions

In order to satisfactorily allege misstatements or omissions of material fact, a complaint must "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made."[42]  "[A] fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell [securities] . . . ."[43]  Mere "allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud."[44]

### 2.    Scienter

---

[41]    *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

[42]    *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (internal quotation marks omitted).

[43]    *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92-93 (2d Cir. 2010) (internal quotation marks omitted).

[44]    *Id.  Accord Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

The required level of scienter under section 10(b) is either "intent to deceive, manipulate, or defraud"[45] or "reckless disregard for the truth."[46]  Plaintiffs may meet this standard by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."[47]  Under the latter theory, plaintiffs must allege that the defendants have engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."[48]  "[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew

---

[45]    *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

[46]    *South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) ("By reckless disregard for the truth, we mean 'conscious recklessness — *i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*.'") (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).

[47]    *ATSI*, 493 F.3d at 99 (citing *Ganino v. Citizens United Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000)).

[48]    *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (internal quotation marks and citations omitted).

or, more importantly, should have known that they were misrepresenting material facts related to the corporation."[49]  An inference of scienter "must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[50]

### B.   Section 20(a) of the Exchange Act

Section 20(a) of the Exchange Act creates a cause of action against "control persons" of the primary violator.[51]  "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."[52]  Where there is no primary violation, there can be no "control person" liability under section 20(a).[53]

## IV.   DISCUSSION

### A.   The Complaint Does Not State a Claim Under Section 10(b)

---

[49]   *Novak,* 216 F.3d at 308.

[50]   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007).

[51]   *See* 15 U.S.C. § 78t(a).

[52]   *ATSI*, 493 F.3d at 108.

[53]   *See id.  See also In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 297-98 (S.D.N.Y. 2006).

This case is not about the poor performance of the Fund and the trading losses Erie sustained as a result, or misrepresentations concerning the efficacy of Mouse Trap.  Instead, Erie alleges that defendants "conceal[ed] significant material liabilities [of GCL and GGL], thereby inflating the value of the limited partnership interest held by [Erie]."[54]  Further, Erie contends that "[d]efendants concealed their plan to hold [Erie] liable for [] 92.6 percent of the[se] undisclosed material liabilities . . . ."[55]  According to Erie, defendants engaged in this conduct in order to induce Erie's investment in the Fund.[56]

### 1.    The Complaint Fails to Plead Any Actionable Misstatements or Omissions

The Complaint fails to "state with particularity the specific facts in support of [plaintiff's] belief that [defendants'] statements were false when made."[57]  The Complaint does not identify any affirmative misrepresentations made by the defendants.  Instead, the Complaint seeks to impose liability based on defendants'

---

[54]    Compl. ¶ 3.

[55]    *Id.* ¶ 8.

[56]    *See id.* ¶ 99.  However, Erie does not allege that it would not have invested in the Fund had it known about the undisclosed liabilities.  Rather, Erie alleges that "[a]s a result of the omissions and false material  misrepresentations of the Defendants, Plaintiff purchased [a] limited partnership interest in the fund at [an] inflated valuation."  *Id.* ¶ 101.

[57]    *Rombach*, 355 F.3d at 172 (internal quotation marks omitted).

omissions.

"Rule 10b-5 forbids the making of any untrue statement of a material fact or the omission of any material fact necessary in order to make the statements made not misleading."[58]  The Complaint alleges that there were five months of conversations between Erie's principal and Espinosa, yet fails to identify the content of any of those communications.[59]  Because the Complaint fails to identify any misleading statements made by defendants, and instead forces the Court to speculate about what statements made by defendants were allegedly misleading, the Court cannot determine whether disclosure of any of the alleged omissions would have made any of those statements not misleading.  Thus, the Complaint does not permit a reasonable inference that disclosure of the alleged omissions was required.

The only specific allegation is that "[d]efendants disguised [] material

---

[58]    *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quotation marks and alterations omitted).  *Accord Glazer v. Formica Corp.*, 964 F.2d 149, 156 (2d Cir. 1992) (explaining that "there is no liability under Rule 10b-5 unless there is a duty to disclose [the information]"); *Monroe County Employees' Retirement Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 349 (S.D.N.Y. 2014) (stating that an "omission is only actionable 'when the failure to disclose renders a statement misleading'") (quoting *In re Alstom SA*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993))).

[59]    The Complaint also does not attach as exhibits the Private Offering Memorandum or the Limited Partnership Agreement, or otherwise refer to the provisions of these Agreements concerning Erie's potential liability for partnership expenses.

liabilities within the financial books and records of companies plaintiff did not own an interest in, thus preventing plaintiff[] from discovering these liabilities through due diligence."[60]  This allegation does not describe a misstatement or an omission per se, but even assuming it did, the Complaint does not permit an inference that the alleged omissions are *material*.  While Erie alleges that it was charged $124,469 in expenses, the Complaint does not itemize these expenses, and the expenses that are listed in the Complaint — $12,000 charged for early termination, $32,000 for legal fees associated with the formation of the Fund, and $51,167.77 in legal feels related to the failed Lombardo deal — do not total $124,469.[61]  Of these expenses, the *only* one described in the Complaint that relates to the Lombardo deal is $51,167.77 in legal fees,[62] and Erie's 92.6 percent responsibility for those fees is $47,381.36.  There is no basis to infer that a charge of $47,381.36 is material in the context of a one million dollar investment.[63]  Indeed, the Complaint does not provide any

---

[60]    Compl. ¶ 5.

[61]    *See id.* ¶¶ 83, 55, 47.  Erie does not challenge the accuracy of the expense accounting or allege that the charges were in breach of the parties' Agreements.

[62]    *See id.* ¶ 47.

[63]    *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (stating that the "use of a percentage as a numerical threshold, such as 5%, may provide the basis" for determining whether an alleged misstatement could be material) (quotation marks

indication of how the partnership shares were priced, and therefore whether inclusion of the Lombardo fees materially impacted the price of the shares.[64] Because Erie received its investment back after the dissolution of the Fund, its only losses are a small investment loss and the disputed expenses.  Accordingly, the Complaint fails to plead any actionable misstatements or omissions.[65]

### 2.      The Complaint Fails to Adequately Allege Scienter or Reasonable Reliance

The Complaint's scienter allegations consist almost entirely of legal conclusions that are not entitled to a presumption of truth.  Particularly glaring is that the Complaint is devoid of allegations concerning Espinosa's motivation to defraud Erie.  The Complaint does not "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference

---

omitted).

[64]      In its opposition papers, plaintiff also refers to a $25,000 fee that Lombardo collected from Espinosa.  But that fee is not mentioned in the Complaint.  Furthermore, the inclusion of an additional $23,150, or 92.6 percent of $25,000, would still not give rise to an inference of materiality.

[65]      The failure to disclose that Erie held an interest of over ninety percent or that the Lombardo transaction was a failure do not by themselves suggest either falsity or materiality.  Likewise, although the Complaint alleges that defendants intended to charge Erie certain fees, the Complaint does not allege that charging these fees constituted a breach of the terms of either the Private Offering Memorandum or the Limited Partnership Agreement.

that the defendant acted with the required state of mind."[66]

The facts alleged in the Complaint tend to undermine any plausible inference of intent in connection with the initial sale of securities. Espinosa only sought to charge the fees *after* Erie withdrew and the Fund was dissolved. The Complaint does not allege how Espinosa could have extracted these fees if the Fund had continued to perform and Erie did not withdraw. In addition, Erie's responsibility for 92.6 percent of the Fund's expenses also appears to be a function of the timing of the dissolution of the Fund, not any intentional conduct by Espinosa: had the Fund been successful, other investors may have joined or existing investors may have increased their holdings, thereby reducing Erie's share.

Finally, plaintiff does not even *argue*, let alone plead, that at the time of transacting with defendants it inquired about the debts of the enterprise, whether there had been previous but failed attempts to attract investors, or whether there were other investors. Nor does plaintiff describe the due diligence it conducted prior to entering into the partnership. In other words, plaintiff fails to plead reasonable reliance. In fact, the far stronger inference is that plaintiff failed to undertake the due diligence expected of a sophisticated investor in an arm's length transaction. Thus, the Complaint fails to plead the required elements of a claim

---

[66]     15 U.S.C. § 74u-4(b)(2).

under section 10(b).  Accordingly, this claim must be dismissed.

## B.     Control Person Liability

A primary violation of the securities laws is an element of control

person liability under section 20(a).[67]  Because I have already held that Erie has not

adequately alleged a primary violation, Erie's control person claim against Espinosa

must also be dismissed.

## C.     State Law Claims

Because there are no remaining federal claims, I decline to exercise

supplemental jurisdiction over plaintiff's state law claims.[68]  Accordingly, the

claims against each defendant must be dismissed.

## D.     Leave to Replead

Plaintiff requests leave to amend in the event any portion of

defendants' motion is granted.  Leave to amend should be freely given "when

justice so requires."[69]  However, based on my review of the Complaint and

plaintiff's submissions in opposition to defendants' motion, justice does not require

---

[67]     *See ATSI*, 493 F.3d at 108.

[68]     *See Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) (stating that "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial").

[69]     Fed. R. Civ. P. 15(a)(2).

leave to replead the securities fraud claims.

*First*, plaintiff has already had an opportunity to amend its claims and had notice of defendants' anticipated defenses prior to the filing of this motion to dismiss.[70]  *Second*, plaintiff did not indicate what additional allegations it would add to the Complaint to cure the deficiencies described by defendants in this motion. *Third*, the paucity of plaintiff's allegations seems intentional.  Plaintiff refers to the parties' underlying Agreements in the Complaint, but strategically fails to describe their terms.  The failure to describe these terms is strategic because both the Private Offering Memorandum and the Limited Partnership Agreement contain provisions addressing the obligations of the partnership to pay certain expenses.[71]  Likewise,

---

[70]    *See* Individual Rules and Procedures of Judge Shira A. Scheindlin, Rule IV.B (stating that parties must exchange letters prior to bringing a motion to dismiss to "attempt to eliminate the need for [the] motion[]").

[71]    *See* 3/25/13 Limited Partnership Agreement of Guayaba Total Return Fund LP, Ex. B to the Amended Declaration of Igor Severinovskiy, the Managing Member of Erie, in Opposition to Defendants [*sic*] Motion to Dismiss ("Severinovskiy Decl."), §§ 4.02 ("All other expenses shall be borne by the Partnership and shall include: the Management Fee; the Partnership's legal, compliance, administrator, audit and accounting expenses (including third party accounting services); organizational expenses . . .[;] and any other expenses related to the purchase, sale, preservation or transmittal of Partnership assets.), 4.03 ("The organizational expenses of the Partnership (including expenses of the initial offer and sale of limited partnership interests) will be paid by the Partnership."); and 3/–/13 Confidential Private Offering Memorandum, Ex. D to the Severinovskiy Decl., at 7-8 (describing expenses to be borne by the Partnership, including legal expenses).

the Complaint alleges that "Espinosa communicated regularly with the principals of Erie for the five months prior to the launch of the Fund," but does not contain a single allegation revealing the content of those communications.[72]

Finally, at its core, this case is about Erie being charged $124,469 in expenses after the dissolution of the Fund.  It is not about investment losses due to misrepresentations about the value of a security.  Whether or not those expenses were rightly included in the charges passed along to Erie is a question of contract law, but the facts of this case do not suggest a securities fraud violation.[73]

## V.    CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED, the securities fraud claims are dismissed with prejudice, and the common law claims

---

[72]    Compl. ¶ 56.

[73]    Based on the terms of the parties' Agreements, Erie cannot plead facts consistent with reasonable reliance.  Plaintiff nonetheless directs the Court's attention to a December 2012 Confidential Private Placement Memorandum of Guayaba Capital Total Return Fund, LLC ("CPPM"), which is attached as Exhibit C to the Severinovskiy Declaration.  However, according to the Complaint, it is Erie's investment in, and the charges incurred by the Fund, a limited partnership, which are at issue in this action, not charges to Guayaba Capital Total Return Fund, LLC, a fund in which Erie did not invest.  Moreover, the Complaint alleges that Erie relied on the Private Offering Memorandum, not the CPPM.  The language plaintiff cites from the CPPM is irrelevant — and potentially misleading to the Court.  The Private Offering Memorandum upon which plaintiff is alleged to have relied explicitly permits charging the Fund for certain fees, even assuming the CPPM does not, but plaintiff fails to quote the operative provisions of the Private Offering Memorandum in the Complaint.

are dismissed because I decline to exercise jurisdiction over them.  The Clerk of the

Court is directed to close this motion (Docket No. 18) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              June 8, 2015

21

**- Appearances -**

**For Plaintiffs**:

Feliks Finkel, Esq.
Finkel Associates LLC
237 Marcus Garvey Blvd.
Brooklyn, New York 11221
(917) 650-6895

**For Defendants Guayaba Capital, LLC, Guayaba GP, LLC, and Keith Espinosa:**

Richard G. Haddad, Esq.
Otterbourg P.C.
230 Park Avenue
New York, New York 10169
(212) 661-9100

**For Defendants SS&C Technologies, Inc. and Gus Sacoulas:**

Gregory J. Hindy, Esq.
McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, New York 10167
(212) 609-6800